```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 9-18-14              │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABDEL-SHAHEED FARRAD MUHAMMAD,

                    Plaintiff,                       13-cv-1962 (PKC)

    -against-                      MEMORANDUM
                                       AND ORDER

COMMISSIONER DORA SCHRIRO, New York
City Department Of Correction, WARDEN
KATIE MULVEY, New York City Department
Of Correction, and SEVERAL JOHN DOE
CORRECTION OFFICERS AT GRVC, RIKERS
ISLAND,

                    Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

       Plaintiff Abdel-Shaheed Farrad Muhammad, who represents himself pro se,

alleges that defendants violated his civil rights by destroying his personal copies of the Qur'an

and the Bible while searching his cell at Rikers Island.  He asserts, pursuant to 42 U.S.C. § 1983,

that the defendants discriminated against him on the basis of his Muslim faith and deprived him

of the right to due process, thereby violating the protections guaranteed by the First and

Fourteenth Amendments of the U.S. Constitution.  He also asserts that the defendants violated

New York law and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §

2000cc, et seq. ("RLUIPA").

       The defendants move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R.

Civ. P., arguing that Muhammad previously executed a general release (the "Release") that bars

his claims in this action.  The Release is not incorporated by reference into the Complaint, and it

is unclear whether it was ever filed with a court.  Defendants served Muhammad with the

*Mailed to plaintiff 9/18/14*

statement required by Local Civil Rule 56.2, which advised Muhammad that the motion to dismiss could potentially be converted into a motion for summary judgment. (Docket # 35.) In his opposition papers, Muhammad, who describes himself as an experienced litigant in this District, has included an affirmation and several evidentiary submissions that go beyond the four corners of his Complaint.

Because the parties have relied on evidence beyond the pleadings, the Court converts the motion to dismiss into a motion for summary judgment. The Release's express language bars Muhammad's claims in this action, and the defendants' motion for summary judgment is therefore granted.

BACKGROUND

Muhammad alleges that at approximately 9:00 a.m. on March 8, 2010, a search team entered housing Unit # 15A in the George R. Vierno Center ("GRVC") on Rikers Island. (Compl't at 2.) Corrections officers performed strip searches of the inmates, removed them from their cells and instructed them to observe in-cell searches. (Compl't at 2.) Muhammad states that he complied with all instructions. (Compl't at 2.)

According to the Complaint, a John Doe defendant corrections officer picked up Muhammad's copy of the Qur'an and examined it, at which point, Muhammad requested that the officer turn through the pages in order to inspect it for contraband. (Compl't at 2.) In response, the officer allegedly tore the cover from the Qur'an, threw it on the floor and stepped on it. (Compl't at 2.) A second officer did the same to Muhammad's copy of the Bible. (Compl't at 2.) Muhammad states that he immediately alerted a deputy warden, who then said, "Shut the fuck up!" and "Toss his fucken cell again!" (Compl't at 2.) The officers continued to search the

cell and to step on the two books.  (Compl't at 2.)  According to Muhammad, officers threw the books and stepped on them during a subsequent search of March 16, 2010.  (Compl't at 2.)

Muhammad states that he discussed the incidents with a facility chaplain, and showed the chaplain torn and shoe-marked books.  (Compl't at 2-3.)  The chaplain responded that the corrections staff had violated Muhammad's religious rights, and suggested that Muhammad file a complaint.  (Compl't at 3.)  Muhammad administratively grieved the incident, and his claim was denied.  (Compl't at 3.)

Muhammad then commenced a state-court action in the Bronx Civil Court, where no disposition was reached.  (Compl't at 3.)  In opposition to the defendants' motion, he has submitted filings from that action, which apparently was commenced on or about September 9, 2010, and asserted that under the RLUIPA and the First Amendment, the City of New York and John Doe defendants were liable for damage to certain "religious books."  (Opp. Mem. Ex. B.)  Muhammad indicates that counsel for defendants neglected to litigate that action, prompting him to initiate the present case.  (Muhammad Aff. ¶¶ 7-8.)  Muhammad, who is no longer incarcerated, seeks $100,000 in damages.  (Compl't at 4.)

Muhammad states that he has "filed numerous civil matters within the USDC/SDNY from 1990 to current under the name Abdul-Shaheed Farrakhan-Muhammad, Shaheed Muhammad, Paul Farrad Simmons and Paul Simmons."  (Compl't at 4.)  According to the defendants, he also brought a previous action in the New York Supreme Court, Bronx County, captioned Paul Farrad Simmons v. City of New York, et al., Index No. 252169-2009 (the "Simmons Action").  (Gutmann Dec. ¶ 4.)  The Simmons Action arose over officials' failure to return confiscated clothing.  (Opp. Mem. at 2; Muhammad Aff. ¶ 5 & Ex. B.)  Specifically, it appears that Muhammad, who then went by the name Paul Simmons, claimed that officials never

returned five pairs of pants, twelve shirts and various other items of apparel.  (Muhammad Aff.

Ex. B.)  On or about December 3, 2011, Muhammad executed a General Release (the "Release")

settling that action, pursuant to which he was paid $1,500 in consideration for releasing all

existing claims against the City of New York.  (Gutmann Dec. Ex B.)  The Release stated in

relevant part that Muhammad:

> does hereby release and forever discharge the City of New York,
> and all past and present officers, directors, managers, administrators,
> employees, agents, assignees, lessees, and representatives of the
> City of New York, and all other individually named defendants and
> entities represented and/or indemnified by the City of New York,
> collectively the "RELEASEES," from any and all claims, causes of
> action, suits, debts, sums of money, accounts, controversies,
> transactions, occurrences, agreements, promises, damages,
> judgments, executions, and demands whatsoever, known or
> unknown, which RELEASOR had, now has or hereafter can, shall,
> or may have against the RELEASEES for, upon or by reason of any
> matter, cause or thing whatsoever that occurred through the dates of
> this RELEASE.

(Gutmann Dec. Ex. B.)  According to the defendants, because the present action seeks relief for

events that occurred prior to the Release's execution, the Release governs this action, and

Muhammad's claims must be dismissed.

DEFENDANTS' MOTION TO DISMISS IS CONVERTED INTO A MOTION FOR
SUMMARY JUDGMENT.

"In adjudicating a motion to dismiss, a court may consider only the complaint,

any written instrument attached to the complaint as an exhibit, any statements or documents

incorporated in it by reference, and any document upon which the complaint heavily relies."  In

re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).  If a motion to dismiss relies on "matters

outside the pleadings," the Court may convert a motion to dismiss into a motion for summary

judgment under Rule 56, Fed. R. Civ. P.  See Rule 12(d), Fed. R. Civ. P.; Parada v. Banco

Industrial De Venezuela, C.A., 753 F.3d 62, 67-68 (2d Cir. 2014).

When a general release has been filed with a court and is a matter of public record, a court may properly take judicial notice of it, and consider it on a motion to dismiss. See, e.g., Twine v. Four Unknown New York Police Officers, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012). In other circumstances, a general release is not appropriately considered as part of a Rule 12(b)(6) motion. See, e.g., Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 497-99 (S.D.N.Y. 2003) (judicial notice not appropriate when an unauthenticated general release was attached to a reply and went beyond a complaint's allegations).

In this instance, the Release is beyond the four corners of the Complaint, which makes no mention of the Release or the Simmons Action. There is no indication that the Release was publicly filed, and there it is not properly the subject of judicial notice. At the same time, Muhammad does not challenge the authenticity of the Release, arguing instead that it should be given no legal effect. (See, e.g., Opp. Mem. at 1-2; Muhammad Aff. ¶¶ 3-5 & Ex. A.) In opposition to the defendants' motion, Muhammad has submitted an affirmation, as well as documents related to the Simmons Action and the underlying events described in the Complaint. These materials are appropriately considered in opposition to a motion for summary judgment. Moreover, as already noted, the defendants served Muhammad with a statement required by Local Civil Rule 56.2, which explains the possibility that a motion to dismiss may be converted into a motion for summary judgment, and sets forth the burdens for opposing a summary judgment motion.

Given the parties' evidentiary submissions and the fact that Muhammad received the notice required by Local Rule 56.2, conversion of defendants' motion into a motion for summary judgment is appropriate here.

- 5 -

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.  It is the movant's initial burden to come forward with evidence on each material element of its claim or defense, sufficient to demonstrate its entitlement to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, granting summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.  Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986). In reviewing a motion for summary judgment, the court may scrutinize portions of the record not cited by the parties, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." <u>Major League Baseball Properties, Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); <u>see also</u> <u>Anderson</u>, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted).  An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  <u>Contemporary Mission, Inc. v. U.S. Postal Serv.</u>, 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (internal quotation marks and citation omitted).

DISCUSSION

A defendant has the initial burden of establishing that a release bars the plaintiff's claims.  <u>Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.</u>, 17 N.Y.3d 269. 276 (2011).  The burden then shifts to the plaintiff "'to show that there has been fraud, duress or some other fact which will be sufficient to void the release.'"  <u>Id.</u> (quoting <u>Fleming v. Ponziani</u>, 24 N.Y.2d 105, 111 (1969)).  "Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'"  <u>Id.</u> (quoting <u>Mangini v. McClurg</u>, 24 N.Y.2d 556-67 (1969)).  <u>Centro Empresarial</u> concluded that the "broad language of the release," which barred "all manner of actions . . . whatsoever . . . whether past, present or future, actual or contingent," reflected the intention to release defendants from claims that were unknown at the time that the release was executed.  <u>Id.</u> at 277.  "'[W]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-

existent controversies.'"  A.A. Truck Renting Corp. v. Navistar, Inc., 81 A.D.3d 674, 675 (2d

Dep't 2011) (alteration omitted) (quoting Lucio v. Curran, 2 N.Y.2d 157, 161-62 (1956)).

   Muhammad acknowledges that he executed the Release in the Simmons Action,

though he adds that Paul Farrad Simmons was his "slave name."  (Opp. Mem. at 2.)  "There was

no other specified release against future incidents," he states.  (Id.)  Muhammad argues that the

Release should not apply because in the Simmons Action, he did not bring claims under the

RLUIPA, and that the Simmons Action did not involve officials' alleged destruction of his

religious texts.  (Id.)  "I was never informed by any Court or counsel that settled told me that the

release would cause dismissal of any future incidents that violated any of my rights, so to even

dismiss a case that stands on the language of the [RLUIPA] where a substantial burden on

Religious Freedom was caused by the defendants, would be deemed prejudice to the statutes of

the Federal law."  (Id.)  Muhammad further states:

> [Defendants' counsel] asserts that my slave name and my Muslim
> name are me, but the action against me as a muslim practicing my
> faith should be discounted by a general release that had nothing to
> do with clothes they took from me then lost them because that is
> why I got the $1,500; to relace [sic] my clothes.  I would never be
> reduced to an amount like that for the desecration of Holy Books
> that are as sacred to Allah as they are to me.  Thus, I submit to my
> best abilty [sic] my opposition.

(Id.)

   The language of the Release, however, is unambiguous, and bars all claims

arising out of past events.  In the Release, Muhammad agrees to "hereby release and forever

discharge the City of New York and all past and present . . . employees . . . from any and all

claims, causes of action, suits . . . and demands whatsoever, known or unknown," that

Muhammad "had, now has or hereafter can, shall, or may have . . . upon or by reason of any

matter, cause or thing whatsoever that occurred through the dates of this RELEASE."  (Gutmann

- 8 -

Dec. Ex. B; Muhammad Dec. Ex. A.)  Muhammad executed the Release on December 3, 2011. (Gutmann Dec. Ex. B; Muhammad Dec. Ex. A.)  The express text of the Release therefore barred claims that Muhammad "had" or "may have" as of the "dates of this RELEASE," which would include those claims related to the events of March 2010.  (Gutmann Dec. Ex. B; Muhammad Dec. Ex. A.)  Even though Muhammad had not yet commenced this action, the underlying events were capable of adjudication at that time.  See A.A. Truck Renting Corp., 81 A.D.3d at 675.

Muhammad also argues that he was not advised that the Release would bar him from bringing subsequent actions, and that the Release should therefore only apply to the Simmons Action.  (Opp. Mem. at 2.)  But "it is well-established that a general release containing language that is clear and unambiguous will protect parties from lawsuits," and only "duress, illegality, fraud or mutual mistake are causes sufficient to invalidate it."  Philips South Beach, LLC v. ZC Specialty Ins. Co., 55 A.D.3d 493, 496 (1st Dep't 2008).  Muhammad's contention that no one adequately explained to him the implications of the Release's terms does not fall within the "causes sufficient to invalidate" the Release.  Id.

The defendants have come forward with evidence establishing that the Release bars Muhammad's claims, and that Muhammad has not offered any fact or argument that invalidates the Release.  See generally Centro Empresarial Cempresa S.A., 17 N.Y.3d at 276. Because no reasonable jury could conclude that the Release is invalid, the defendants' motion is granted and the case is dismissed.

CONCLUSION

The defendants' motion to dismiss is converted into a motion for summary judgment, and the motion is GRANTED.  (Docket # 34.)  The Clerk is directed to terminate the motion and to enter judgment for the defendants.  The Court certifies pursuant to 28 U.S.C. §

1915(a)(3) that any appeal from this order would not be taken in good faith.  Coppedge v. United

States, 369 U.S. 438, 444-45 (1962).

    SO ORDERED.

                      P. Kevin Castel
                  United States District Judge

Dated: New York, New York
    September 17, 2014